# GIANAKIS LAW LLC
Attorney at Law

James P. Gianakis

51 JFK Parkway, 1st Floor
Short Hills, New Jersey 07078

315 Madison Avenue, 3rd Floor
New York, New York 10017

New Jersey: 973.218.2500
New York: 212.878.8815
Mobile: 908.337.4436

July 17, 2023

**VIA E-FILING**
Honorable Hector Gonzalez, U.S.D.J.
United States District Court
 for the Southern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: **Becky Pund, et al. v. SFC College, et al.**
     **Civil Action No. 1:23-cv-1498-HG**

Dear Judge Gonzalez:

   This firm represents the Plaintiffs, Becky Pund and Charles Pund, in the above-referenced matter. I have been in communication with counsel for the Defendants, St. Francis College ("SFC") and Irma Garcia, and submit this joint letter on behalf of all parties who are currently represented in this action, without prejudice. Based upon counsel for the Defendants' most recent letter, dated July 10, 2023, it remains unclear whether their office intends to represent the other named Defendant, John Thurston. They have represented that they will notify my office and the Court as soon as that is determined.

   The parties believe that a settlement conference or mediation session may be helpful at the appropriate time, but have not yet unanimously agreed to have Your Honor refer the case for a settlement conference before Magistrate Judge Henry or to the Eastern District of New York's Court-Annexed Mediation program. After Defendants have the opportunity to assess Plaintiffs' settlement demand, the parties will revisit the option of settlement discussions and/or mediation.

   The parties do not unanimously agree to have all further proceedings in this case, including motions and trial with or without a jury, conducted before Magistrate Judge Henry.

   The parties are concurrently filing a Civil Case Management Plan with the Court.

## Plaintiffs' Claims

This is a civil action for entry of a final judgment of injunctive relief, together with compensatory and punitive damages, based upon (a) the unlawful breach by SFC, Ms. Garcia, Mr. Thurston, and their agents of specific contractual obligations and promises upon which Plaintiffs detrimentally relied in connection with Becky's recruitment, period of enrollment, separation from, and subsequent investigation by SFC and its agents into Defendants' unlawful conduct, (b) the unlawful conduct and comments by members of SFC, during and following Becky's period of enrollment at SFC that severely impacted Plaintiffs and other female student-athletes as they tried to protect themselves and move on from what had happened, and (c) the unlawful efforts by SFC, Ms. Garcia, Mr. Thurston, and their agents to cover up their unlawful conduct, to obstruct investigations into what had happened, and to discredit Becky in the college's further attempt to distance itself from legal and regulatory requirements to maintain a safe environment for its female student-athletes.

The Court has subject matter jurisdiction over this action pursuant to *28 U.S.C. §1332 (Diversity)*. Plaintiffs are individuals who reside in New Jersey and continue to be victims of Defendants' unlawful conduct and comments, which included but were not limited to Mr. Thurston's unlawful and inappropriate behavior before, during, and after Becky's time at SFC, Ms. Garcia's concerted efforts to cover it up, and the knowing and intentional efforts by Defendants and their agents to shame Plaintiffs, to neglect their responsibilities to protect and keep safe Becky and her teammates and their obligations to comply with all applicable laws and regulations, to unlawfully obstruct and influence the investigation of serious allegations, and to further enable a toxic environment that severely impacted Plaintiffs and a number of other young women and their families physically, emotionally, psychologically, reputationally, and financially, during their time at SFC and as they have attempted to move on and heal. SFC is incorporated in New York and has its principal place of business in New York.

The court has personal jurisdiction over SFC and venue is proper pursuant to *28 U.S.C. § 1391(a)* as Becky attended school at SFC within the Eastern District of New York, and the agreements and promises made to Plaintiffs, together with the unlawful events giving rise to these claims, occurred within the Eastern District of New York.

Becky was recruited by the SFC women's basketball program to attend school and to play basketball for the college. Plaintiffs decided to have Becky attend SFC and to play basketball based upon specifically negotiated terms of agreement that, among other things, obligated SFC to cover all costs associated with her tuition, room, board, medical treatment, and other expenses throughout her time at SFC. Moreover, Plaintiffs' decision to have Becky attend SFC was based upon specific representations, warranties, and promises made by Defendants to ensure Plaintiffs that SFC would provide a safe, protective environment for Becky and took extra special care of its female student-athletes.

Mr. Thurston, the head basketball coach at the time, made a specific point during his introductory remarks to Plaintiffs and several other young women and their families that the SFC women's basketball team had been the victim of a horrific situation involving sexual assault and abuse that required significant legal intervention, resulted in a legal settlement by the college, and left lasting scars on the college and program. Mr. Thurston made it very clear that he and the college had since implemented a zero-tolerance policy regarding sexual and other abuse and misconduct, that the young women in the basketball program were under his watch, and that

strict guidelines were in place, including but not limited to curfews and restrictions on interaction with the SFC men's basketball team, and prohibitions against bullying or hazing, in a concerted effort to protect these female student-athletes. Ms. Garcia, as the SFC Director of Athletics, affirmed and fully endorsed these protective guidelines, and went further by assuring Plaintiffs and other young women and families that SFC took its responsibilities very seriously regarding compliance with every federal, state, and local law, including but not limited to Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq., as well as every National Collegiate Athletic Association ("NCAA") requirement, regarding the safety, security, monitoring, investigation, reporting, and remediation of all matters related to the well-being of their student-athletes, and in particular, their female student-athletes. Plaintiffs relied heavily on these assurances from Mr. Thurston and Ms. Garcia in their decision to entrust the next four years of Becky's formative years to SFC and its women's basketball program.

Unfortunately, under Mr. Thurston's "watch," all of the protective restrictions that had been promised were ignored, and Defendants disregarded all of the policies, representations, warranties, and promises about protecting its young women, in large part because the women's basketball program was realizing some success and bringing some recognition to SFC. Members of the coaching staff and team regularly engaged in unlawful and inappropriate conduct that included, among other things, repeated acts of bullying, hazing, intimidating, and degrading behavior toward the younger women in the program including Becky that resulted in serious physical, emotional, psychological, and social impact and consequences. Mr. Thurston made it known that he had his "favorites" who, together with his assistant coaches, enjoyed a different set of standards and relationship with him, and as such, were enabled by him to establish and to reinforce this toxic hierarchy and culture within the women's basketball program. And most notably, and disturbingly, Mr. Thurston engaged in direct conduct that was severe and pervasive, knowing and malicious, unlawful and inappropriate, and resulted in significant emotional, psychological, physical, and financial damage – to Becky and other young women in the program, together with their families.

As Becky and other young women turned to Ms. Garcia with pleas for help, they realized that Ms. Garcia was a significant part of the problem and that the cover-up was just as bad as the underlying crime, and in turn, a crime itself. Ms. Garcia used Becky to disclose names and details of what had happened, then denied that they had ever spoken, and breached the confidentiality of her discussions with Becky by sharing with Mr. Thurston that Becky had reported her concerns about the manner in which he was treating her and other student-athletes.

Things only got worse with further harassment, discrimination, bullying, hazing, intimidation, retaliation, and disparagement of Becky's name and reputation, culminating in Mr. Thurston cleaning out Becky's locker and making it clear to everyone that Becky was no longer welcome as a part of the team. As a direct and proximate result of this unlawful and immoral conduct, Becky had no choice but to turn to physicians' care that continues to this day and to leave her scholarship, education, and athletic opportunities at SFC only to face the disturbing reality that Mr. Thurston and the college continued to adversely affect her opportunities elsewhere by among other things, tarnishing her name and reputation at the school and basketball program she had transferred to, as well as within the group of former teammates, classmates, and members of the SFC community who Becky had known, thereby inhibiting her ability to engage at New York University, and more concerning, to begin to heal and move on from this awful experience and unbearable situation. The hostile and inappropriate behavior that Becky

was subjected to severely impacts her to this day – emotionally, psychologically, physically, and financially.

Moreover, when Becky finally got SFC to open an investigation, it was over before it began. After interviewing Becky (and assuring Plaintiffs that all the active players would be interviewed immediately, that all communications would be strictly confidential and handled one on one, and that the college takes these matters very seriously), the investigation was conducted under the careful watch of the very people about whom the concerns were raised – including Ms. Garcia and Mr. Thurston. Several recent alumnae of the women's basketball program at SFC shared disturbing experiences that caused stress, anxiety, depression, eating disorders, thoughts of suicide, and ultimately decisions to either accept this abuse or to leave the school. Other recent alumae reported that they were never contacted by the college's investigator. Members of the then current women's basketball team reported being intimidated and coerced with concern about retaliation if they shared what was really happening, and several members of the then current women's basketball team shared with Becky that they had been told that "Becky is only doing this for the money" which could not have been further from the truth. In the end, SFC concluded that nothing was wrong and that nothing should be done to correct the situation. And despite multiple requests for a copy of the investigation report, it has never been provided.

SFC is required to have a set of policies and procedures, governed by federal, state, and local laws and regulations, including Title IX, that clearly outline how these matters should have been addressed and the consequences for not following those standards. People in positions of authority and control engaged in inappropriate and unlawful conduct, manufactured reasons to somehow rationalize it, and the institution failed to truly address known issues of sexual abuse, sexual harassment, gender discrimination, harassment, intimidation, bullying, hazing, defamation, tortious interference, and retaliation, which instilled fear, anxiety, and depression resulting in significant damage across every victim and the family members, friends, and support around them. Multiple female student-athletes had no choice but to transfer out of SFC, to seek counseling and medical care, and to attempt to put their lives back together, only to realize that Defendants would maliciously and intentionally follow them to ensure they struggled, which they continue to do to this day.

Notably, one month after Plaintiffs filed their initial Complaint in this matter, SFC College announced that it was closing down its entire Division 1 athletics program in Brooklyn. Upon information and belief, there apparently has been a longstanding debate within the faculty and administration about the risk and liability the athletics program has created. The severity and timing of the decision to eliminate it in its entirety appears far from coincidental.

**Defendants' Defenses**

Defendants deny all of Plaintiffs' claims. Defendants plan to file a motion to dismiss Plaintiffs' Amended Complaint according to the briefing scheduled set forth below.

As described in detail in Defendants' May 15, 2023 letter, Plaintiffs list several causes of action against Defendants including: (i) breach of contract; (ii) promissory estoppel; (iii) breach of duty of loyalty; (iv) breach of fiduciary duty; (v) tortious interference with actual and/or prospective business dealings; (vi) harassment; (vii) discrimination; (viii) retaliation; (ix) defamation and (x) sexual abuse and misconduct. Despite the Amended Complaint being devoid of dates, Plaintiff Becky Pund was last a member of the College's women's basketball team

during the Spring 2016 semester. Plaintiff Becky Pund transferred to another university in August 2016. Plaintiffs filed their complaint on February 23, 2023. Because all of Plaintiffs' causes of action relate to Plaintiff Becky Pund's participation on the College's women's basketball team, all of their claims accrued prior to August 2016. As a result, all of Plaintiffs' claims are barred by the applicable statutes of limitations.

In addition to being barred by the applicable statutes of limitations, Plaintiffs have failed to sufficiently plead any of their causes of action. Plaintiffs' Amended Complaint is devoid of any specific allegations against Defendants and instead merely contains general, conclusory allegations. Plaintiffs also fail to identify which causes of action are asserted against which Defendant. As such, Plaintiffs' Amended Complaint fails to sufficiently raise a cause of action against Defendants.

## Contemplated Motions

Defendants plan to file a Motion to Dismiss by August 2. Plaintiffs will file opposition papers by September 5, and Defendants will file reply papers by September 18.

## Any other topics that the parties want to bring to the Court's attention?

At least twelve other women – including all but one member of Becky's recruiting class – shared their experiences of similar, disturbing accounts of Mr. Thurston's unlawful comments and conduct, as well as similar, ignored pleas for assistance to Ms. Garcia and the administration of SFC. Some have contemplated joining this legal action, while man are hesitant to come forward due to the sensitive nature of what happened and fear that they will be further harassed, intimidated, and retaliated against by Defendants. Plaintiffs may request that certain discovery is conducted pursuant to a protective order and that related filings are made under seal.

Thank you for the Court's continuing attention to and guidance in this matter.

Respectfully submitted,

s / James P. Gianakis

James P. Gianakis

cc:    Ryan Soebke, Esq. (via e-filing)
       Ariel Ronneburger, Esq. (via e-filing)