UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BECKY PUND and CHARLES PUND,

                           Plaintiffs,

            v.

ST. FRANCIS COLLEGE, JOHN DOES 1-
10, IRMA GARCIA, and JOHN
THURSTON,

                           Defendants.

**MEMORANDUM & ORDER**
23-CV-01498 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Becky Pund and her father, Plaintiff Charles Pund, sued St. Francis College

("SFC"), her former school, and certain of its employees, on various bases related to

mistreatment and discrimination Ms. Pund alleges to have experienced during her time on the

SFC women's basketball team.  Defendants SFC and Irma Garcia have moved to dismiss, and

the Court previously converted part of their motion into a motion for summary judgment.  For

the reasons explained below, the Court dismisses Plaintiffs' sole federal claim under Title IX as

time-barred.  In addition, the Court dismisses the action against Defendant Thurston, who was

never served by Plaintiffs, and the John Doe Defendants, whom Plaintiffs never identified.

Finally, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

**BACKGROUND**

Ms. Pund was a student-athlete at SFC in Brooklyn, which recruited her to play

basketball there.  ECF No. 30 ¶ 1 (Second Amended Complaint; "SAC").  Plaintiff Charles Pund

is Ms. Pund's father.  *Id.* ¶ 2.  Plaintiffs "decided to have Becky attend [SFC] and to play

basketball based upon specifically negotiated terms of agreement that, among other things,

obligated [SFC] to cover all costs" of attendance.  *Id.* ¶ 12.  Plaintiffs say that they relied on

SFC's "specific representations, warranties, and promises . . . to ensure the Punds that it provided a safe, protective environment for Becky and took extra special care of its female students and student-athletes." *Id.*  According to her academic transcript, she enrolled at SFC in the summer 2014 semester and was last enrolled there during the May 2016 "intersession," which ended on May 26, 2016.  ECF No. 33-3 ¶¶ 3–4 (Weisman Decl.); ECF No. 33-4 (SFC Transcript).[1] Ms. Pund then transferred to New York University ("NYU").  SAC ¶ 1.

During Ms. Pund's time at SFC, Defendant John Thurston was the head coach of the women's basketball team.  *Id.* ¶ 5.  While delivering "introductory remarks" to Plaintiffs, Mr. Thurston "made it very clear that he and [SFC] had . . . implemented a zero-tolerance policy regarding sexual and other abuse and misconduct, that the young women in the basketball program were under his watch, and that strict guidelines were in place, including but not limited to curfews and restrictions on interaction with the [SFC] men's basketball team . . . and prohibitions against bullying or hazing," following an earlier "situation involving sexual assault and abuse" affecting the women's basketball team.  *Id.* ¶ 13.  Similarly, Defendant Irma Garcia, SFC's Director of Athletics, "affirmed and fully endorsed these protective guidelines."  *Id.*

Although the SAC is sparse on detail and is imprecise with respect to what precise acts Ms. Pund alleges to have experienced, Plaintiffs claim that Mr. Thurston engaged in various forms of misconduct.[2]  *Id.* ¶ 15.  Those include:

> (a) speaking to and about Becky and other women in a degrading, intimidating, bullying, and defamatory manner; (b) subjecting Becky and other women to body-

---

[1]    As explained further herein, the Court partially converted the instant motion to dismiss into a motion for summary judgment.  Accordingly, it relies on this uncontroverted evidence from outside the pleadings.

[2]    For all allegations based on the SAC, but especially these, the Court emphasizes that it is "required to treat [Plaintiff's] factual allegations as true, drawing all reasonable inferences in favor of Plaintiff[] to the extent that the inferences are plausibly supported by allegations of fact."  *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).  The Court

shaming, together with sarcastic and belittling comments about their weight, diet, hairstyles, and clothing, causing serious eating disorders and psychological trauma; (c) mocking their health and mental health status despite knowing that many of the young women were struggling with their emotional and psychological health and well-being; (d) using sexist and racist terminology to describe them; (e) sending sexually suggestive and inappropriate text messages to them; (f) posting inappropriate photographs of women on the basketball team; (g) providing women with alcoholic beverages and making inappropriate advances toward them; (h) insinuating that Becky and other young women were somehow at fault for his inappropriate behavior; (i) insulting them in public and in private; and (j) knowingly and maliciously disparaging them, undermining their credibility and reputation, and interfering with their future opportunities.

*Id.* As such, "all of the protective restrictions that had been promised were ignored." *Id.* ¶ 16. Ms. Pund experienced "serious physical, emotional, psychological, and social impact and consequences" as a result. *Id.*

Ms. Pund and other members of the women's basketball team expressed concerns to Ms. Garcia about Mr. Thurston's conduct. *Id.* ¶ 17. Ms. Pund also reached out to SFC faculty members for assistance. *Id.* ¶ 22. Ms. Garcia "encouraged [Ms. Pund] to open up in confidence" to her. *Id.* ¶ 23. However, she downplayed Ms. Pund's concerns "because the basketball team was winning," and failed to take action. *Id.* Ms. Garcia also informed Mr. Thurston about Ms. Pund's complaints. *Id.* ¶ 24. As a result, Ms. Pund was "further belittled, bullied, harassed, and subjected to heightened levels of physical abuse and misconduct, as well as verbal abuse, hostility, insults, sarcasm, and retaliation." *Id.* ¶ 18. For instance, Mr. Thurston prohibited Ms. Pund from seeking "proper medical treatment" for a broken foot. *Id.* Ultimately, Mr. Thurston cleaned out Ms. Pund's locker, "making it pointedly clear to everyone that Becky was no longer welcome as a part of the team." *Id.* ¶ 24.

---

therefore "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt." *Id.* Unless noted, case law quotations in this Order accept all alterations and omit internal quotation marks, citations, and footnotes.

Plaintiffs allege that SFC "disregarded all" its promises about player safety in order to "protect its brand." *Id.* ¶¶ 19–20.  Members of the Board of Directors, some of whom are sued as "John Doe" Defendants,[3] were involved in, for example, hiring Mr. Thurston "despite similar, suspect conduct" at his prior job, and later "enabling [his] behavior" at SFC.  *Id.* ¶¶ 6, 20. Plaintiffs also allege that SFC, "through the actions and inaction of [Ms. Garcia] and administration," "acknowledge[ed] Mr. Thurston's unlawful and inappropriate behavior" but failed to intervene, "intimidate[d] people from speaking out," interfered with "efforts to investigate the unlawful conduct," "summarily dismiss[ed] people impacted and with knowledge of what happened," and "intentionally and maliciously reach[ed] out to further harass and to interfere with the lives of these victims even beyond their time at [SFC]."  *Id.* ¶ 21.  Plaintiffs allege that "Mr. Thurston and [SFC] . . . tarnish[ed] [Ms. Pund's] name and reputation" at NYU, "as well as within the group of former teammates, classmates, and members of the [SFC] community."  *Id.* ¶ 29.

While Ms. Pund was "on her way out" of SFC, she was referred to SFC's Title IX coordinator.  *Id.* ¶ 27.  SFC initiated an investigation with legal counsel and Ms. Pund was interviewed.  *Id.*  Plaintiffs were "assur[ed] . . . that all the active players would be interviewed immediately, that all communications would be strictly confidential and handled [one-on-one], and that [SFC] takes these matters very seriously."  *Id.*  But it "appeared that the investigation was conducted under the careful watch of the very people about whom the concerns were raised – including Ms. Garcia and Mr. Thurston."  *Id.*  For example, the SAC states that several members of the women's basketball team "had been told" by Ms. Garcia, Mr. Thurston, "and

---

[3]      The other "John Doe" Defendants are "members of the . . . administration, athletic department and/or other parts of [SFC] and/or the [SFC] women's basketball program."  SAC ¶ 6.

4

their agents" that "Becky is only doing this for the money." *Id.* At the end the investigation, SFC took no action and declined to provide its investigation report to Plaintiffs. *Id.*[4]

Plaintiffs seek recovery against all Defendants for violations of Title IX and for state law breach of contract, promissory estoppel, sexual abuse and misconduct, harassment, retaliation, tortious interference, and defamation. *Id.* ¶¶ 34–80. They also demand, among other things, "a complete copy of the investigation report that [SFC] prepared in connection with the previous complaints raised by the Punds and many other female student-athletes, as well as all other communications related to how the investigation was conducted," an investigation through an "independent firm" to investigate SFC's athletic department "to determine accountabilities for the toxic culture and environment," and compensatory and punitive damages. *Id.* at 12–14.[5]

Because it is relevant to the disposition of this action, the Court recounts in detail this case's relatively complex procedural history. Plaintiffs filed the Complaint against SFC, Ms. Garcia, and John Does 1-10 on February 24, 2023. ECF No. 1. On May 15, 2023, Defendants SFC and Ms. Garcia (together, the "Moving Defendants") filed a pre-motion letter in anticipation of a motion to dismiss. ECF No. 11. Plaintiffs filed a response on May 25, 2023, and also sought leave to amend the Complaint. ECF No. 13. On July 7, 2023, Plaintiffs filed an Amended Complaint ("AC"), which also named Defendant Thurston. ECF No. 17. On July 28, 2023, the Court entered a case management plan and discovery began. ECF No. 21. Also on that date, the Court, noting that Plaintiffs invoked diversity jurisdiction as a basis for subject-matter jurisdiction, explained that Plaintiffs' allegations concerning Ms. Garcia's and

---

[4]     Years later, after this suit was filed, SFC ended its Division I athletics program. SAC ¶ 33.

[5]     The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

Mr. Thurston's citizenships were inadequate.  *See* ECF No. 22 at 1–2.  Accordingly, the Court

ordered SFC, Ms. Garcia, and Mr. Thurston to identify their citizenships in accordance with Rule

7.1(a)(2).  *See id.* at 2.  It also required Ms. Pund to file a declaration concerning her own

purported citizenship, *id.* at 2–3, and to explain that none of the John Doe Defendants were

citizens of New Jersey (like Plaintiffs, *see* AC ¶ 8), ECF No. 22 at 3.  Finally, the Court ordered

Plaintiffs to identify the John Doe Defendants on or before October 2, 2023, noting that multiple

months of discovery would have taken place before that date.  *Id.* at 3–4.

On July 31, 2023, the Moving Defendants filed Rule 7.1 statements, with SFC identifying

itself as a New York citizen and Ms. Garcia identifying herself as a New Jersey citizen.  ECF

No. 23.  Because Plaintiffs had previously alleged that they were New Jersey citizens, the Court

directed Plaintiffs to file a letter explaining "why Plaintiffs' claims should not be dismissed for

lack of subject matter jurisdiction" due to the absence of complete diversity between the parties.

*See* July 31, 2023, Text Order.  In response, on August 8, 2023, Plaintiffs asserted that this Court

has subject-matter jurisdiction based on federal-question jurisdiction under 28 U.S.C. § 1331.

ECF No. 25 at 2.[6]  Specifically, Plaintiffs wrote:

> Plaintiffs' allegations clearly address issues particular to federal law, statutes, and
> regulations, including but not limited to Title IX of the Education Amendments of
> 1972, 20 U.S.C. §1681 et seq. ("Title IX"), as well as every National Collegiate
> Athletic Association ("NCAA") requirement, regarding the safety, security,
> monitoring, investigation, reporting, and remediation of all matters related to the
> well-being of their student-athletes, and in particular, their female student-athletes
> and Ms. Pund, and various federal employment and tort laws.

*Id.*  On the same day, the Court entered an order explaining that although the AC did not assert a

cause of action under Title IX, it "mention[ed] Title IX on several occasions" and also pleaded

---

[6]     On this point, Plaintiffs' letter incorrectly referred to Section 1332, the diversity
jurisdiction statute.

causes of action for "sexual abuse and misconduct," "harassment," "discrimination," and "retaliation," "which the Second Circuit and its district courts have recognized as forms of misconduct that can give rise to Title IX claims." ECF No. 26 at 2 (citing cases). The Court then ordered Plaintiffs to file the SAC to "(i) more clearly assert[] a cause of action under Title IX; (ii) invoke[] the Court's federal question jurisdiction; and (iii) address[] the shotgun pleading defects" identified in that Order. *Id.* at 3.

On August 11, 2023, Plaintiffs filed a letter in which they stated: "Candidly, given that Defendants Irma Garcia and John Thurston appear to be residents of New Jersey, Plaintiffs cannot represent that none of the John Doe Defendants . . . may be citizens of New Jersey as well." ECF No. 27 at 2. Plaintiffs again invoked federal question jurisdiction as a basis for subject-matter jurisdiction. *See id.* They also stated that they would "make every effort to identify the John Doe Defendants as soon as possible and in compliance with the Court's Orders." *Id.*[7]

On August 22, 2023, Plaintiffs filed the SAC. ECF No. 30.[8] On September 25, 2023, the Moving Defendants filed their motion to dismiss. ECF No. 33; ECF No. 33-5 (Motion to Dismiss; "Mot."). After the parties jointly sought an extension of time to complete discovery, ECF No. 34, the Court entered an Order on October 2, 2023, directing Plaintiffs to file a motion to amend in order to identify the John Doe Defendants on or before November 17, 2023. ECF No. 35 at 1. In that same Order, the Court noted that Plaintiffs had not yet filed proof of service of the AC with respect to Defendant Thurston and directed them to serve by October 5, warning about the possibility of dismissal under Rule 4(m). *Id.* at 1–2. The Court's Order further stated:

---

[7]     Later that day, Ms. Pund also filed a declaration concerning her citizenship. ECF No. 28.

[8]     They also filed an unauthorized letter describing the SAC and their approach to this litigation. ECF No. 31.

Defendants St. Francis College and Irma Garcia have moved to dismiss Plaintiffs' second amended complaint both on the ground that it fails to state a claim and based on the statute of limitations. *See* ECF No. 33. In support of their arguments that the statute of limitations bars all of Plaintiffs' claims, Defendants have submitted evidence outside the scope of Plaintiffs' complaint, specifically Plaintiff Becky Pund's transcript at St. Francis College and a declaration by the Registrar of St. Francis College, which together purport to establish the date on which Plaintiff Becky Pund ceased to be a student at St. Francis College. The Court hereby gives notice to the parties that, with respect to Defendants' statute of limitations arguments, the Court is converting Defendants' motion to dismiss into a motion for summary judgment pursuant to Rule 12(d). *See Voltaire v. N.Y. City Health & Hosps. Corp.*, No. 19-cv-3705, 2020 WL 13851383, at *1 (E.D.N.Y. Nov. 20, 2020) (converting motion to dismiss raising statute of limitations defense into motion for summary judgment).

Plaintiffs shall include with their opposition papers due on October 25, 2023, any evidence that they contend raises an issue of material fact with respect to Defendants' statute of limitations arguments. To the extent that Plaintiffs contend they need further discovery from Defendants to oppose Defendants' statute of limitations arguments, Plaintiffs shall include with their opposition papers a declaration that describes with specificity what additional discovery they need and why such discovery would likely raise an issue of material fact related to Defendants' motion, as required by Rule 56(d). *See Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016) ("A party seeking to delay resolution of a summary judgment motion on grounds that he has been deprived of certain discovery materials must show that the material sought is germane . . . and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient.").

*Id.* at 2–3.

Plaintiffs filed an update regarding their attempted service on Mr. Thurston on October 6, 2024. ECF No. 36. Because Plaintiffs showed good cause under Rule 4(m), the Court extended the time to serve Mr. Thurston to November 6, 2023. *See* Oct. 16, 2023, Text Order. However, it warned that "[i]f Plaintiffs fail to serve Defendant Thurston by that date, the Court will dismiss Plaintiffs' claims against him without prejudice pursuant to Rule 4(m) unless Plaintiffs file a letter no later than [that date], showing that extremely unusual circumstances merit a further extension." *Id.* Plaintiffs then sought another extension to serve Mr. Thurston on November 3, 2023, ECF No. 38, and again finding good cause, the Court extended the deadline to serve him to

December 20, 2023, warning that failure to serve him by that deadline would result in dismissal under Rule 4(m) unless they could show additional good cause, *see* Nov. 3, 2023, Text Order.

On November 27 and 28, 2023, Plaintiffs filed their opposition to the Moving Defendants' motion to dismiss along with an accompanying affidavit.  ECF No. 39 (Aff.); ECF No. 41 (Opposition; "Opp.").  On December 8, 2023, the Moving Defendants filed a reply.  ECF No. 42 ("Reply").  On December 20, 2023, Plaintiffs filed another letter, partially repeating arguments in the instant motion to dismiss, (i) seeking oral argument on the pending motion to dismiss; (ii) seeking an extension of discovery; (iii) seeking leave to amend; and (iv) indicating that they were still attempting to serve Mr. Thurston and "to identify potential additional parties."  ECF No. 43.  The Court denied those requests and stayed discovery.  *See* Dec. 21, 2023, Text Order.  The Court further explained that it would not extend the time to serve Defendant Thurston and that it was "taking under consideration whether to dismiss Plaintiffs' claims against Defendant Thurston for failure timely to serve him, pursuant to Rule 4(m), or on the merits based on the arguments made in the remaining Defendants' motion to dismiss."  *Id.* The Moving Defendants' motion to dismiss, which has been partially converted into a motion for summary judgment, is now ripe for decision.

## **LEGAL STANDARD**

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Johnson v. Mount Sinai Hosp. Grp.*, No. 23-466, 2024 WL 3289475, at *1 (2d Cir. July 3, 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

In addition to requiring sufficient factual matter to state a plausible claim for relief, pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must provide a short, plain statement of claim against the defendant so that it has adequate notice of the claims against it. *Id.* at 677–78 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id.*  To satisfy this standard, the complaint must, at a minimum "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery."  *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000).

The Court has also converted the portion of Defendants' motion concerning the statute of limitations into a motion for summary judgment under Rule 12(d).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In other words, "summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-movant."  *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021).  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the absence of a genuine issue

of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party.  *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).

## DISCUSSION

### I.    Plaintiff's Title IX Claim Is Time-Barred

The Court agrees with the Moving Defendants that Plaintiffs' Title IX claim is time-barred.  *See* Mot. at 14.  For background, Title IX, 20 U.S.C. § 1681, prohibits sex-based discrimination in federally funded programs or activities.  *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 218 (2022).  There is an implied right of action to sue to enforce it.  *Id.*; *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 52 (2d Cir. 2023).  Title IX borrows the relevant state statute of limitations for personal injury actions.  *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004).  And "[i]n New York, personal injury claims must be filed within three years from the time the cause of action accrued."  *Id.* (citing N.Y. C.P.L.R. § 214(5)).  The "standard" accrual rule applies to Title IX claims:  "a claim accrues when the plaintiff has a complete and present cause of action."  *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 438 (S.D.N.Y. 2014), *aff'd*, 579 F. App'x 7 (2d Cir. 2014).

"Title IX provides a cause of action for plaintiffs who contend that the educational facility caused their injury and also, on a theory that upon notice to the facility, they failed to take remedial action."  *Doe v. Nat'l Ramah Comm'n, Inc.*, No. 16-cv-6869, 2018 WL 4284324, at *7 (S.D.N.Y. Sept. 7, 2018).  It similarly prohibits retaliation against those who complain of sex discrimination.  *Papelino v. Albany Coll. of Pharmacy*, 633 F.3d 81, 91 (2d Cir. 2011).

11

Accordingly, Plaintiffs allege that SFC violated Title IX by failing to have "clear" policies and procedures "in place to prevent a hostile environment based in particular [o]n issues of gender discrimination, sexual harassment, and sexual violence." SAC ¶ 35. They also allege that SFC and Ms. Garcia, among other things, "obstruct[ed] . . . the investigation of voiced concerns." *Id.* ¶ 37. Finally, they claim that Defendants "retaliated against Plaintiffs when they voiced concerns." *Id.* ¶ 38.

Here, the Court is persuaded by the Moving Defendants' argument that any Title IX claim predicated on any of this unlawful activity accrued while Ms. Pund was a student at SFC. Mot. at 14. Nearly all of the alleged misconduct concerning Mr. Thurston and his staff took place when he was Ms. Pund's coach at SFC. *See* SAC ¶ 15 ("Under Mr. Thurston's 'watch' during this time period, all of the protective restrictions that had been promised were ignored. Members of the coaching staff and team regularly engaged in unlawful and inappropriate conduct . . . ."). When Ms. Pund allegedly "attempted to share her concerns," her "role on the team was greatly affected." *Id.* ¶ 18. She also "reached out to Ms. Garcia and members of the [SFC] faculty and administration and pleaded for assistance, both verbally and in writing," but "the concerns were first questioned, then acknowledged, and ultimately dismissed with nothing done." *Id.* ¶ 22; *see also id.* ¶ 23 (describing a meeting with Ms. Garcia). Mr. Thurston later made it "pointedly clear to everyone that [Ms. Pund] was no longer welcome as a part of the team." *Id.* ¶ 24. Critically, Ms. Pund was still an SFC student, albeit "on her way out," when she was referred to SFC's Title IX coordinator "[a]fter months and months of complaining" at SFC. *Id.* ¶ 27. And after she was interviewed, "it appeared that the investigation was conducted under the careful watch of the very people about whom the concerns were raised." *Id.* Accordingly, on any of their theories of Title IX liability, Plaintiffs had a complete and present

cause of action during Ms. Pund's time at SFC.  *See Doe v. State Univ. of N.Y. Purchase Coll.*, 617 F. Supp. 3d 195, 207–08 (S.D.N.Y. 2022) ("*SUNY Purchase*") ("The knowledge required is minimal; the plaintiff need only have knowledge of the injury's existence and knowledge of its cause or the person or entity that inflicted it.").

The only allegation that postdates Ms. Pund's time at SFC is that "Mr. Thurston and [SFC] continued to adversely affect her opportunities elsewhere by among other things, going out of their way to tarnish her name and reputation at the school and basketball program she had transferred to, as well as within . . . the SFC community . . . thereby inhibiting her ability to engage at [NYU], and more concerning [sic], to begin to heal and move on."  *Id.* ¶ 29; *see also id.* ¶ 72 ("[W]hen Becky had no choice but to transfer to [NYU] to continue her college education and effort to play intercollegiate basketball, Mr. Thurston and/or his agents intentionally contacted the varsity basketball coach at NYU to tarnish Becky's reputation and ability to start fresh in her new program."); *id.* ¶ 76.  Critically, though, any additional conduct (as opposed to manifestation of injury) occurred only shortly after Ms. Pund's transfer, as Plaintiffs allege that Ms. Pund's "time at [SFC] and *immediately following* her time at [SFC] were severely impacted by repeated acts of sexual abuse, sexual harassment, gender discrimination . . . [and] retaliation."  *Id.* ¶ 14 (emphasis added).

Plaintiffs initiated this action in February 2023, so all claims that accrued prior to February 2020 are time-barred.  *See Curto*, 392 F.3d at 504 (applying the statute of limitations in this way).[9]  However, the Moving Defendants have put forward Ms. Pund's transcript

---

[9]      As discussed further below, Plaintiffs' sole argument concerning the statute of limitations is that the continuing violation doctrine applies.  However, the Court notes that even if the Court tolled the statute of limitations for the maximum of 228 days, as provided by the Governor's COVID-19 executive orders, it would have no effect on the Court's conclusion that the Title IX claim is time-barred because, for the reasons explained below, any Title IX claim accrued years

demonstrating that her last semester at SFC ended on May 26, 2016, ECF No. 33-4, as confirmed

by a declaration from SFC's registrar, ECF No. 33-3 ¶ 4.  That end date of Ms. Pund's

enrollment at SFC is undisputed.  Plaintiffs do not even contest it in opposition.  *See* Opp. at 17.

And while Plaintiff's counsel, in response to the Court's Order, declared that "there is . . . a

tremendous amount of outstanding evidence that . . . raises an issue of material fact with respect

to Defendants' statute of limitations arguments," ECF No. 39 ¶ 5, just asserting that does not

make it so.  *See* Reply at 8.  As the Second Circuit has made clear, such a "bare assertion that the

evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient" "to

delay resolution of a summary judgment motion on grounds that [the plaintiffs] ha[ve] been

deprived of certain discovery materials."  *Alphonse*, 828 F.3d at 151 (interpreting Rule 56(d)).

Notably, Plaintiffs do not even seriously contest that their Title IX claim is time-barred,

and instead attempt to rely on the "the continuing wrong doctrine," which the Court understands

to be an assertion that the continuing violation doctrine applies.[10]  *See* Opp. at 14.  "Under the

continuing violation doctrine, a plaintiff may bring claims for discriminatory acts that would

have been barred by the statute of limitations as long as an act contributing to that discrimination

took place within the statutory time period."  *Purcell v. N.Y. Inst. of Tech.*, 931 F.3d 59, 65 (2d

---

earlier.  *See SUNY Purchase*, 617 F. Supp. 3d at 207–08 (applying COVID-19-related tolling
provisions to Title IX claim).

[10]    Although the two doctrines have an analytical resemblance, the continuing wrong
doctrine has a particular meaning in commercial litigation, as underscored by Plaintiffs'
exclusive reliance on commercial cases from lower New York State courts.  *See* Opp. at 14–17;
*see also SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 529–30
(E.D.N.Y. 2013) (explaining that under New York law, "[t]he continuing wrong doctrine is
generally considered an equitable exception to the contemporaneous ownership rule" in
shareholder litigation).  In certain instances, the Moving Defendants also err by conflating the
doctrines.  *See, e.g.*, Reply at 5 (citing *In re Facebook, Inc., Sec. & Derivative Litig.*, 922 F.
Supp. 2d 445, 466 (S.D.N.Y. 2013)).  Because federal law recognizes the continuing violation
doctrine in the Title IX context, the Court uses that term here.  *E.g.*, *Papelino*, 633 F.3d at 91.

Cir. 2019). "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the defendant to continue unremedied for so long as to amount to a discriminatory policy or practice." *Id.* Importantly, "this doctrine does not apply to discrete acts of discrimination or retaliation that occur outside the statutory time period, even if other related acts of discrimination occurred within the statutory time period." *Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022).[11] "Rather, the doctrine extends exclusively to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Id.* The doctrine "is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *See SUNY Purchase*, 617 F. Supp. 3d at 209.

These legal standards foreclose Plaintiffs' argument for use of the continuing violation doctrine here. In their Opposition, they devote just two sentences purporting to support its application: "Defendants made new promises well beyond Becky's period of enrollment. Defendants' unlawful conduct and comments continued well beyond Becky's period of enrollment." Opp. at 17. The first of those claims is irrelevant to the Title IX analysis. As to the second assertion, to the extent it supports the Title IX claim, it is unpersuasive for several reasons. First, it is just a bald assertion. As the Moving Defendants correctly recognize, "Plaintiffs do not identify any such comments, nor when they were made, in either their Complaint or Opposition." Reply at 6. Plaintiffs point to no particular conduct that supposedly took place "well beyond" Ms. Pund's time at SFC, much less within the limitations period.[12]

---

[11]     *Tassy* emerges from the Title VII context but is instructive because "Title VII principles apply in interpreting Title IX." *Torres v. Pisano*, 116 F.3d 625, 630 n.3 (2d Cir. 1997).

[12]     *See e.g.*, SAC ¶ 61 ("Becky has been subjected to continuing wrongful acts of harassment – oftentimes, with Defendants going out of their way to harm Becky . . . ."); *id.* ¶ 77 ("[A]s Becky and her father Charles put their hearts and souls into trying to get [SFC] to pay attention

Their counsel does not assert that any additional discovery would uncover violations during the limitations period. *See generally* ECF No. 39. Nor does he explain "with any specificity how the facts sought are reasonably expected to create a genuine issue of material fact" as to the timeliness of the Title IX claim specifically. *Alphonse*, 828 F.3d at 151. Thus, since "no contributory act occurred within the [limitations] period, [Plaintiffs] may not apply the continuing violation doctrine to revive [their] claims." *Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 223 (E.D.N.Y. 2010); *Ellis v. Univ. of Rochester*, No. 19-cv-6380, 2024 WL 493504, at *29 (W.D.N.Y. Feb. 8, 2024) (granting summary judgment to university defendant where the plaintiff failed to show that any of the incidents potentially giving rise to Title IX liability "occurred within the limitations period, let alone that they [we]re all part of a single policy of the University"); *see also Verschleiser v. Frydman*, No. 22-cv-7909, 2023 WL 5835031, at *10 (S.D.N.Y. Sept. 7, 2023) (where plaintiff argued that some at-issue conduct was "'ongoing' or occurred 'recently,'" disallowing "such vague and conclusory assertions to reset the clock on the applicable statute[] of limitations").

Second, assuming *arguendo* that Plaintiffs did identify an act sufficient to trigger Title IX liability within the limitations period, their argument overstretches the doctrine's limited reach. Interpreting Plaintiffs' argument generously, they claim that SFC employees made negative comments about Ms. Pund after she left SFC—in other words, they discriminated and retaliated against her. But such "discrete discriminatory acts are not actionable if time barred, even when

---

to the toxic culture and environment that existed and resulted in severe and pervasive harm to so many young women in the basketball program and their families, including the Punds, Defendants went out of their way to defame them by consistently and repeatedly, during the 'investigation' of their concerns and in the years since Becky has attempted to move on from this devastating impact on her life, stating . . . that Becky and Charles are somehow to blame for everything that has occurred and are only out for the money.").

they are related to acts alleged in timely filed charges." *See Tassy*, 51 F.4th at 532.  In this sense, Plaintiffs' assertion that "continuing wrongs triggered new causes of action" gets it partially right.  Opp. at 14.  To be sure, a "discrete" illegal act "starts a new clock for filing charges alleging that act," but such an act does not reanimate time-barred claims, as here.  *Id.*

Further, to the extent Plaintiffs claim that SFC engaged in "unlawful conduct" after Mr. Pund's departure by, for example, failing to conduct an investigation they viewed as adequate, that can no longer even be viewed as a "hostile environment" claim implicating the continuing violation doctrine because she was no longer in that environment.  *See Brown v. Castleton State Coll.*, 663 F. Supp. 2d 392, 401 (D. Vt. 2009) ("The 2003–2004 allegations describe a situation where [the plaintiff] was physically present at [the college], in ongoing contact with hostile faculty and administrators, and forced to tolerate harassment in the course of his day-to-day existence.  But once [the plaintiff] withdrew from [the college] in fall 2004, he was no longer exposed to this harassment.").  After all, "[t]he relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity."  *Davis v. Monore Cnty. Bd. of Educ.*, 526 U.S. 629, 653 (1999).  To be sure, illegal conduct by an SFC agent during Ms. Pund's time at NYU could give rise to an independent *tort* claim.  But "[Ms. Pund] was not a student at [SFC] and therefore [SFC]'s acts or failures to act could not have prevented her from getting an education at [NYU], where [SFC] does not have any control or influence over the educational programs in which [Ms. Pund] was enrolled."  *See Doe v. Brown Univ.*, 270 F. Supp. 3d 556, 562 (D.R.I. 2017) (explaining that the "absence of a relationship" between plaintiff's educational institution and the harasser's educational institution is "dispositive," and rejecting Plaintiff's Title IX claim against the harasser's school).

Finally, Plaintiffs argue that, in their own words, there are "continuing damages," such that Defendants' conduct "inhibit[ed] [Ms. Pund's] ability . . . to begin to heal and move on." SAC ¶ 29 (emphasis altered and capitalization omitted).  That is no basis to invoke the continuing violation doctrine.  *SUNY Purchase*, 617 F. Supp. 3d at 210 ("[W]hile Plaintiff may have continued to feel the effects of what Plaintiff claims were discriminatory acts . . . this is not sufficient to allege a continuing violation." (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)).

Because the continuing violation doctrine does not resurrect Plaintiffs' admittedly untimely claims, summary judgment is granted to the Moving Defendants on their statute of limitations defense, and the Court dismisses the Title IX claim as to them.[13]

## II.   Defendant Thurston Is Dismissed for Insufficient Service of Process

As previously discussed, Plaintiffs sued Mr. Thurston in July 2023, and despite having received extensions of time to do so and having been warned that failure to timely serve would result in dismissal, had still not served him over five months later.  *See* Dec. 21, 2023, Text Order.  The Court declined Plaintiffs' request for another extension of time to serve.  *See id.* Pursuant to Rule 4(m), the Court dismisses this action without prejudice against Defendant Thurston, who has never been served with process in this case.  *See, e.g.*, *Brookliv LLC v.*

---

[13]     Title IX prohibits "discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  On this basis, "the overwhelming majority of federal courts that have [addressed this issue], both in this Circuit and elsewhere, have held that only the institutional recipient of federal funds can be held liable under Title IX."  *Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 396 (E.D.N.Y. 2005).  Thus, as explained by Judge Vitaliano,"[t]hough ultimately academic given the untimeliness of [P]laintiff's Title IX claim," the "Title IX claim against the individual [D]efendants is subject to dismissal for the independent reason that there is no individual liability under the statute."  *Coe v. Regan*, No. 19-cv-5327, 2022 WL 467053, at *5 n.7 (E.D.N.Y. Feb. 3, 2022).

*Meehan*, No. 21-cv-7178, 2022 WL 1488664, at *1–2 (E.D.N.Y. May 11, 2022) (dismissing complaint *sua sponte* under Rule 4(m)).

### III.    Unidentified John Doe Defendants Are Dismissed

The Court also dismisses the action against all John Doe Defendants.  As the Court previously explained, Plaintiffs were required to move to amend to name these Defendants by the extended deadline of November 17, 2023, but they did not do so despite having had nearly five months of discovery.  *See* Dec. 21, 2023, Text Order.  Indeed, to date, they have neither identified any John Doe Defendant nor moved to do so.  That is striking because these John Doe Defendants (*e.g.*, members of SFC's Board) were not difficult to identify through basic discovery tools.  As with service, the Court previously warned Plaintiffs if they failed "to identify the John Doe Defendants and their states of citizenship by [its] deadline," it would consider *sua sponte* dismissal of the claims against them without giving Plaintiffs further opportunity to be heard. *See* ECF No. 22 at 3–4.  Accordingly, dismissal of this action as to the John Doe Defendants without prejudice is now appropriate, and the Court dismisses these Defendants.  *See Lee v. Jarecki*, No. 18-cv-9400, 2019 WL 948881, at *6 (S.D.N.Y. Feb. 14, 2019) (dismissing *sua sponte* John Doe defendants after plaintiff "had an opportunity" to discover their identities); *Williams v. Johnson*, No. 17-cv-2351, 2019 WL 1437820, at *8 (S.D.N.Y. Mar. 31, 2019) (same); *A'Gard v. Locke*, No. 14-cv-0613, 2016 WL 5137273, at *2. *5 (N.D.N.Y. Sept. 21, 2016) (same).

### IV.    The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims

The SAC's sole asserted basis for subject-matter jurisdiction is federal question jurisdiction.  *See* SAC ¶ 8.  Plaintiffs do not assert diversity jurisdiction, and there is none due to the absence of complete diversity.  *Id.* ¶ 9.  Nor do Plaintiffs assert supplemental jurisdiction

under 28 U.S.C. § 1367(a).  However, because Plaintiffs' Title IX claim provided a "proper basis for original federal jurisdiction" in this action, it is available to Plaintiffs.  *See Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021).  Nevertheless, because that sole claim over which this Court had original jurisdiction has been dismissed as to all Defendants, the Court may, and now does, decline to exercise supplemental jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3).

Ordinarily, a court's resolution of all the claims over which it has original jurisdiction before trial "generally points to declining to exercise supplemental jurisdiction" over any remaining claims.  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018); *see also Cangemi*, 13 F.4th at 135 (quoting Judge Calabresi's concurrence in *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 404 (2d Cir. 2017), for the proposition that "after all federal claims have been dismissed, the default rule is that federal courts should not decide related state-law claims unless there is good reason for doing so").  Although the Moving Defendants asked the Court not to exercise jurisdiction in their Motion, Plaintiffs never explain in Opposition why this case calls for departure from the default rule, and the Court finds that there is no "good reason" to do so.

In view of the factors of economy, convenience, fairness, and comity, which inform the Court's discretion, *Catzin*, 899 F.3d at 81, declining to exercise supplemental jurisdiction over the state law claims makes sense here.  The parties appear to have engaged in only limited discovery, but according to Plaintiffs there is still a "tremendous amount of outstanding evidence" to be discovered, ECF No. 39 ¶ 5, which will require "significant additional time" to complete, ECF No. 43 at 1–2.  As such, "sending the pendent claims to state court would not result in the wasteful and duplicative expenditure of resources."  *See Doe v. Sacks*, No. 23-cv-

1307, 2024 WL 402945, at *9 (S.D.N.Y. Feb. 2, 2024) (declining to exercise supplemental jurisdiction over state law claims following dismissal of Title IX claims).  Nor does this case involve any preemption issues.  *See id.*  Furthermore, although the Court has not considered whether Plaintiffs' state law claims are timely, if they are, dismissal of them without prejudice here will not render them untimely in state court.  *See Black v. Ganieva*, 619 F. Supp. 3d 309, 350 (S.D.N.Y. 2022) (explaining that 28 U.S.C. § 1367(d) tolls these claims).  Therefore, Plaintiffs' state-law claims are dismissed without prejudice.  Plaintiffs are free to pursue them in state court, where such contractual, quasi-contractual, and tort claims are typically heard.

## **CONCLUSION**

For the foregoing reasons, summary judgment is granted to the Moving Defendants as to Plaintiffs' untimely Title IX claim, and the Title IX claim is dismissed with prejudice as to them. Plaintiffs' claims against Defendants Thurston and John Does are dismissed without prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, and they are dismissed without prejudice.  All claims having been dismissed, the Clerk of Court is respectfully directed to enter judgment consistent with this Order and to close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
         September 11, 2024